UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>MICHAEL MONTALVO,<br><br>　　　　　Defendant. | No.  2:89-cr-0062 WBS GGH<br><br><br>ORDER OF NON-RECUSAL |

　　　　Defendant, petitioner, and plaintiff, Michael Montalvo, hereafter "petitioner," seeks to recuse the undersigned pursuant to both 28 U.S.C. §§ 144 and 455 on a basis that is literally decades old.  Not only that, but the primary basis for the sought recusal was completely set forth and ruled upon by the undersigned *in this case* over *fifteen* years ago.  For the reasons given below, the undersigned will not refer this matter to another judge as the declaration supporting it is neither timely nor sufficient, and will deny the motion made pursuant to § 144.  Nor have any events transpired since that long ago ruling which would require the undersigned to recuse because of any appearance of impropriety under § 455.  The entire motion is denied.

　　　　　　　　　　　　　　　　　　LEGAL STANDARDS

　　　　Both §§ 144 and 455 deal with the occasions in which a federal judge should recuse him

1

or herself. Although the substantive standards for the appearance of impropriety are the same in both statutes, § 455 is broader in scope and the procedures for adjudicating recusal motions are very different. See United States v. Sibla, 624 F.2d 864, 867 (9th Cir. 1980); see also Wood v. McEwen, 644 F.2d 797, 802 (9th Cir. 1981). With respect to motions made pursuant to § 144, the *facts* set forth therein are not adjudicated for their truth; however, the judge against whom the recusal motion is made determines whether the declaration/affidavit is *timely* made, and whether the facts are *sufficient* on their face to warrant recusal. Sibla, 624 F.2d at 867; United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978). Only if both aspects, timeliness and sufficiency, are demonstrated will the assigned judge refer the recusal motion to another judge as provided in § 144. Facts, for purposes of § 144, do *not* include opinions, beliefs, rumors, speculations or sheer conclusions; these categories of statements are not considered in the sufficiency analysis. Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987); McEwen, 644 F.2d at 802. Facts, would include, of course, the records in the action as well as other facts of which judicial notice could be taken.

Recusal motions under § 455 are ruled upon by the judge against whom the motion is made. The facts are not presumed to be true, and their truth may be determined by the assigned judge. Sibla, 624 F.2d at 867.

Judges recuse when a reasonable person would conclude that the facts as found sufficient, or otherwise adjudicated, would indicate the appearance of impropriety, i.e., the real possibility of bias such that a judge's impartiality might reasonably be questioned. Id. However, it is as much the duty of the assigned judge *not* to recuse when the facts do not warrant recusal, as it is to recuse when the facts so indicate. United States v. Sierra Pacific Industries, 759 F. Supp. 2d 1198, 1200–01, 1205 (E.D. Cal. 2010).

## RELEVANT FACTS

Because of the dual nature of the fact finding process under the two statutes, sufficiency (§ 144) and the truth of the facts (§ 455), the undersigned will take care not to intermingle the rendition of facts appropriate for each statute. The facts pertaining to the § 144 motion (which may also be considered for the § 455 determination) will be set forth in the text; facts which may

be considered *only* in connection with the § 455 motion are contained within footnotes in this section.

The undersigned was an Assistant United States Attorney in the Eastern District of California from October 1982 through March 5, 1990. In the mid-1980s, the undersigned was promoted to Deputy Chief, Civil Division (EDCA) and in or about early 1988, to Chief, Civil Division. The undersigned took the bench as a magistrate judge in the Eastern District on March 6, 1990. The undersigned is presently retired as an "active" magistrate judge (November 19, 2012), and has been continuously in a "full time" recall status, similar to a district judge's "senior status," since that time. Nothing in the records of this court indicate that prior to March 6, 1990, the undersigned had any direct or indirect involvement in the Montalvo criminal case, including any criminal forfeiture proceedings.[1] [2]

As set forth in the record of this case, petitioner was convicted on October 19, 1989. He was found to be a conductor of a continuing criminal enterprise, ultimately resulting in a sentence of life imprisonment. After petitioner's filing of numerous appeals, recusal motions against the then assigned District Judge Tervizian, Rule 35 motions, and reconsideration of many of the rulings related to such proceedings throughout the decades, the undersigned was assigned to this case to make orders or findings and recommendations as appropriate in the 28 U.S.C. § 2255 motion filed by petitioner on November 5, 1997. Prior to that time, the undersigned had presided, without objection, to various pre-trial criminal proceedings involving co-defendants of Montalvo,

////

////

---

[1] The undersigned's knowledge is that he had no involvement whatsoever in the Montalvo criminal action, including any criminal forfeiture proceedings. To the best of the undersigned's knowledge, there were no *civil* forfeiture proceedings involving Montalvo property.

[2] During the time the undersigned was employed in the USAO, there was a separation of civil and criminal work. This is not to say that civil AUSAs never worked with criminal division lawyers in a particular case. Indeed, the undersigned would prosecute a criminal proceeding on rare occasion just for the experience. The supervisors in each division, however, did not cross-supervise during the time that the undersigned was employed in the USAO. Civil chiefs were responsible for civil cases only in their supervision. The undersigned never supervised Criminal Division AUSAs or their cases.

whose criminal proceedings post-dated Montalvo's conviction and the undersigned becoming a magistrate judge.[3]

The first substantive assignment in the Montalvo case for the undersigned was petitioner's first § 2255 motion. That motion was filed by Montalvo on November 5, 1997, eight years after his conviction. However, during the pendency of that motion, and based on the papers filed, the undersigned recognized (for the first time) that there might be some connection between petitioner's case and another civil forfeiture case(s) pending in the late 1980s (hereinafter "the Riley forfeitures"). The undersigned filed an order on June 7, 2000, setting forth his recollection of the Riley forfeitures, and his non-involvement in Montalvo's case. ECF No. 865. The pertinent substance of that order is worth repeating.

> However, it was not until the undersigned was preparing the Orders/Findings and Recommendations pertinent to this case, which discuss Montalvo's illegal drug/business relationship with Robert Riley, that the undersigned recalled that when he was Deputy Chief or Chief of the Civil Division . . . he had involvement in a civil forfeiture action involving Robert Riley.[2]
>
> That involvement was, again to the best of the undersigned's recollection, limited to assisting in drafting/authorizing the initial forfeiture papers. The undersigned does not believe that the Riley forfeitures were ever contested, and the undersigned does not remember being involved in any litigation activity involving those forfeitures. The forfeitures would have involved the relationship of the properties seized to facilitations of drug offenses. The undersigned had no direct or supervisory involvement in the Montalvo criminal case(s), for investigative or prosecutorial purposes, nor does the undersigned ever remember being involved in Montalvo civil forfeiture actions in any fashion. The undersigned has no present recollection of any Montalvo relationship to the Riley forfeitures.
>
> If the state of the record is as the undersigned recalls, the undersigned does not believe that any recusal is warranted. Compare United States v. Ampriester, 37 F.3d 466[, 467] (9th Cir. 1994) (present judge and Former United States Attorney must recuse himself from any case which was in the office during his tenure because he supervised the case by definition) with United States v. Scholl, 166 F.3d 964[, 977] (1999) (judge and former Assistant United States Attorney need not recuse herself because she had no direct or supervisory responsibilities with respect to the case at issue when it was in the office). However, the undersigned

---

[3] All subsequent references to the "Montalvo case" mean the case specifically involving petitioner Montalvo and no one else.

4

> desires to confirm his recollection. The United States is therefore ordered to search its records to determine the state of involvement of the undersigned in Riley forfeitures, and to file within fifteen days of today's date a report giving a complete characterization of the Riley forfeitures, i.e., when the forfeitures took place, what they involved, the evidence upon which they were based, the undersigned's involvement in the forfeiture proceedings, and any relation the Riley forfeitures may have had to the Montalvo criminal action. The United States shall also report concerning Montalvo civil forfeiture actions, as well as whether the undersigned was ever involved in such actions, either directly or as supervisor.

ECF No. 865.[4] The second footnote of the order reads as follows:

> The undersigned remembers the first name as "Richard" Riley, but the passage of time may have dimmed the memory of first names. The undersigned does recall civil forfeiture proceedings instituted against a Riley who lived in Loomis, CA. Mr. Riley's potentially forfeitable property came to the government's attention, as the undersigned recalls, due to the murder of Riley at his residence.

Id. at 2 n.2.

The government responded to the court's order on June 23, 2000.[5] ECF No. 867. The undersigned, again summarizing the Riley Forfeitures, concluded that the government's response essentially confirmed the undersigned's recollection, and no order of recusal was entered. ECF No. 870 at 2. A findings and recommendations was issued on the merits of the first § 2255 motion in that same document.[6] Id. at 58.

The undersigned performed numerous other tasks in this case since his assignment in

---

[4] As the Order set forth, the Riley Forfeitures were commenced sometime after Riley's death. The undersigned has no feasible access to such files at the present time, but recalls that the case was commenced fairly late in the undersigned's tenure at the USAO—1988 or 1989.

[5] The undersigned has been informed that this response is in archives. Prior to the advent of CM/ECF in the Eastern District in 2005, only court filings were scanned and made available in pdf format. This particular scanning of court filings commenced in or about 2000. Prior to that time, only a paper file was maintained of the entire docket record.

[6] The docket reflects at this time that Montalvo was represented by counsel. It is evident throughout the decades of this case, however, that Montalvo was intimately familiar with the record in this case as it was created, and the underlying facts thereto, whether he was represented by counsel or was appearing pro se. His present recusal motion is a testament to that fact. Thus, Montalvo concedes that he knew about the recusal issue: "[After being assigned to the case] Magistrate Hollows filed a document stating that he had no conflict of interest." ECF No. 1125 at 5.

5

1997; however, at times the assigned district judge would take over all matters. The case was recently referred to the undersigned again after Montalvo filed his most recent Rule 35 motion. The undersigned recommended on August 11, 2015, to the Honorable William B. Shubb, that petitioner be found a vexatious litigant and that a particularized vexatious litigant order be entered. ECF No. 1121. That Recommendation is presently pending before Judge Shubb.

After the Recommendation was issued, petitioner filed his motion to recuse on September 28, 2015. ECF No. 1125. The primary, stated basis for that motion was the undersigned's participation as an Assistant United States Attorney, and ostensibly as Chief, Civil Division, Eastern District of California, in the Riley Forfeitures —the same issue which had been analyzed in 2000. Petitioner gets several foundational facts, as opposed to speculative leaps, correct. The undersigned did indeed function as an AUSA in the civil division of the USAO, Eastern District of California.[7] Riley was a drug dealer in and about the Eastern District. He was killed, probably by a disgruntled customer and/or associate in the drug trade, in his home. To whatever extent the undersigned worked on the Riley Forfeitures, the undersigned assigned himself these forfeitures which arose out of the related drug trafficking.[8] The undersigned does not recall whether the Riley forfeitures were completed by March 6, 1990 (the date on which the undersigned was sworn in as a magistrate judge), but such is not important in any event.[9]

The undersigned does not specifically recall the witnesses or evidence in the Riley forfeitures, so the facts stated by petitioner concerning the witness Woodhouse in his dual Montalvo/Riley associations, the inferential association of petitioner and Riley in the illegal drug trade, and the particulars of Riley's death (not presently recalled by the undersigned) will be accepted as true for the purposes of this motion.

Petitioner's rendition of other "facts" concerning what the undersigned "must have known" about the interrelationship of the Riley forfeitures and Montalvo cases, the extent of the

---

[7] Montalvo's present ability to recall, or more likely have obtained partial intelligence about, the undersigned's caseload in the United States Attorney's Office during the 1980's bespeaks his overarching knowledge of the record in this case or matters he believes to be related to his case.
[8] It is very possible that another AUSA participated in the civil forfeiture case as well.
[9] The undersigned has no presently feasible way of accessing any of the records associated with the Riley Forfeitures—records which in all probability have been archived long ago.

1  undersigned's knowledge of the facts of Riley's death, whether the undersigned "held those facts
2  against petitioner Montalvo," the "evidence" reviewed by the undersigned in the late 1980s,
3  including any contact the undersigned had with a DEA investigator common to both cases, the
4  extent to which petitioner believes that the undersigned participated, somehow, in the Montalvo
5  criminal action, and the like, are all the rankest speculation on petitioner Montalvo's part—
6  speculation that is rebutted by the 2000 recusal proceedings.  Montalvo's speculations will not be
7  afforded a presumption of correctness.[10]  See Wood v. McEwen, 644 F.2d 797, 802 (9th Cir.
8  1981) (refusing to accept conclusory statements as sufficient facts).
9      There is no statement by Montalvo that the undersigned was ever tasked with prosecuting
10  or supervising petitioner's criminal action.  There is no allegation that the undersigned was tasked
11  with supervising anyone in the criminal division of the Eastern District USAO, or anything
12  occurring within that division.  Nor does petitioner assert that there was any civil action involving
13  petitioner Montalvo as a party pending in the Eastern District, and to the best of the undersigned's
14  knowledge, as set forth above, there was none.

15                                DISCUSSION

16      I.  Petitioner Montalvo's Motion to Recuse is Untimely Under § 144

17      In all likelihood, Montalvo may well have known about the Riley forfeitures, and the
18  undersigned's participation therein, back in 1989 when he was undergoing his own criminal
19  prosecution.  However, the undersigned need not rely upon that possibility in that the entire
20  matter of the undersigned's fairly limited participation in the Riley forfeitures was set forth in the
21  record of *this* case in 2000.  Fifteen years later, petitioner posits that the undersigned should be
22  recused.  Petitioner asserts in his declaration that he did not know about the undersigned's
23  involvement in the Riley forfeitures in 1998 at or about the time the undersigned was first

---

[10] The undersigned accepts petitioner's apparent concession that he trafficked in illegal substances with Riley.  However, petitioner does not allege that he was the only person with whom Riley trafficked in illegal drugs, nor is that the understanding of the undersigned.  The undersigned's focus in the Riley forfeitures was all of Riley's dealings, not the particulars of each episode of his drug trafficking, or the role of everyone involved in Riley's drug trafficking.  Petitioner states that he had nothing to do with Riley's death, and the undersigned has no understanding to the contrary.

assigned to petitioner's case. ECF No. 1125 at 17. However, Montalvo cannot, and does not, state that he was unaware of the undersigned's *sua sponte* recusal proceedings, and the undersigned's determination not to recuse himself. In fact, as set forth in footnote six, Montalvo concedes his knowledge of this record proceeding. The undersigned finds that Montalvo had such knowledge as of 2000 at the very latest.

Under any analysis of § 144, a fifteen year delay in bringing a recusal motion, i.e., a motion for reconsideration of a decade and a half old ruling, is untimely. See Preston v. United States, 923 F.2d 731, 733 (9th Cir. 1991) (a motion to recuse must be brought with "reasonable promptness" after the facts underlying the motion are known by the movant); Wood v. McEwen, 644 F.2d at 802 (recusal motion brought with a lengthy delay after facts underlying motion are known and especially after an adverse ruling, untimely). Moreover, petitioner's Montalvo's present attempt to scrutinize court rulings filed in this case long ago for evidence of bias, e.g., "scraping the bottom of the barrel," are clearly untimely. Petitioner Montalvo's motion to recuse based on § 144 should be denied on this ground alone.

II. The Facts Are Insufficient to State a Reason for Recusal Under § 144

As set forth above, and stripped of speculation, petitioner Montalvo has alleged that the undersigned was an AUSA tasked with some responsibilities in a civil forfeiture action(s) which had an indirect connection with his own criminal case and criminal actions. For the reasons expressed in 2000 and set forth here at length above, and based on the undersigned's ruling in 2000, *which is law of the case*, the undersigned's duties as a civil AUSA and Chief/Deputy Chief, Civil Division do not warrant recusal in this action. See Scholl, 166 F.3d at 977. To the extent that Montalvo alleges bias on grounds different from the Riley allegations (all based on the record herein), such allegation are discussed in the § 455 analysis below, and are adopted herein. Montalvo's allegations are insufficient and the § 144 recusal motion will be denied.

III. Section 455

Although § 455 does not contain a facial timeliness requirement, it only makes sense that § 455 motions cannot be made on stale facts at any time a litigant desires. See Liljeberg v. Health Services Acqusition Corp., 486 U.S. 847, 869 (1988) (noting that a delay of ten months is

generally excessive enough to merit the denial of a § 455 motion); see also Liljeberg, 486 U.S. at 873–74 (Rehnquist, C.J., dissenting); United States v. Rogers, 119 F.3d 1377, 1380 (9th Cir. 1997). For this reason alone, petitioner's § 455 motion should be denied. Going further, however, to the extent that petitioner Montalvo asserts the Riley forfeitures as a grounds for recusal under § 455, the previous decision for § 144 is incorporated herein.

Petitioner also asserts that the undersigned should recuse himself because the undersigned has been "hostile" and "biased" towards him since 2008. With only one exception; however, petitioner gives no specifics. What's more, petitioner's general assertions are just characterizations of litigants who are not successful in court. The undersigned will not shadow box with these vague allegations. The record speaks for itself, and it reveals nothing which could be considered grounds for recusal.

The one specific which petitioner Montalvo gives is a phrase the undersigned used in 2007 (eight years ago) to wit: that petitioner was "scratching the bottom of the barrel" with respect to issues and reiteration of old issues in a 2007 filing. ECF No. 1125 at 17–18. Such cannot reasonably be construed as "mocking" or "scorning" as petitioner Montalvo would have one believe. Rather, such a phrase was simply an apt characterization of the motion at issue and no different, or even milder, than the commonly used phrases that issues have "no merit," or are "frivolous." Petitioner Montalvo is either feigning his offense at the undersigned's phrase or has indeed become hyper-sensitive over the years. In a related vein, petitioner thinks the undersigned was offensive at that time because he referenced petitioner's fifth, yes fifth, Rule 35 motion. That number has only increased over time. Moreover, except in the most exceptional circumstances, a judge's characterization of a litigant's actions, based on the record, or evidence before the judge, cannot be utilized to seek recusal. Liteky v. United States, 510 U.S. 540, 555 (1994).

Offense is also taken at the mere fact that the undersigned has recommended the entry of a vexatious litigant order. ECF No. 1125 at 18. It is not the intent of the undersigned to re-analyze the order here. However, in terms of the mindset of the undersigned, such an order simply reveals that enough is enough—something the Ninth Circuit often does when it directs an appellant to file no more motions or pleadings in a particular appeal. Petitioner Montalvo must

understand that judicial resources are the quintessential "zero sum game"—that for every hour spent on petitioner's case, an hour cannot be spent on another litigant's case. After exhaustion of legitimate issues, a litigant engaging in constant reiteration of motions and issues therein penalizes those litigants who need the court's attention every bit as much as the now abusive litigant needed when first bringing his claims. Frustration with meritless, unnecessary, repetitive or spiteful filings is not a ground for recusal.

For the aforementioned reasons, the undersigned will not recuse under § 455.

## CONCLUSION

In accordance with the foregoing, THE COURT HEREBY ORDERS that petitioner's motion to recuse the undersigned, ECF No. 1125, is DENIED.

Dated: October 28, 2015

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE